LOTTINGER, Judge.
This is a suit by Armand W. Watson, against the General Accident, Fire & Life Assurance Corporation, Ltd., wherein the plaintiff seeks the sum of $1,092.35 as damages resulting from a collision which occurred to his 1953 Ford dump truck. The petition alleges that on October 20, 1955, Lionel Watson, employee of the petitioner, was driving the Ford dump truck in a westerly direction on Blount Road in the Parish of East Baton Ro.uget and that at the same time a 1953 Packard two-door automobile was driven by a Mrs. Elaine C. Gaudin in an easterly direction on the wrong side of the Blount road, and that even though the truck driver pulled over to the shoulder as far as he could on the right side of the road, that nevertheless the Packard automobile collided with the truck causing damage to it. Negligence is charged against the driver of the Packard automobile in driving at a high rate of speed, in driving on the left or wrong side of the road and in failing to'keep a proper 'look-out. The defendant filed an answer admitting the insurance coverage but generally denying the other allegations of the petition. It was affirmatively pleaded in the answer that the accident was caused solely by the negligence of Watson in entering the Blount road from a lesser or side road, without first ascertaining that the way- was clear. It likewise pleaded' contributory negligence. Assuming the position of plaintiff in reconvention, the' defendant prayed for the -sum of $970 as damages caused the Packard automobile as a result of the collision.
The suit was tried before a jury in the Lower Court, which found- for the defendant in the main demand and for the plaintiff, defendant in the reconventional demand. The plaintiff appealed the decision of the Lower Court and the defendant, plaintiff in reconvention, has answered the appeal asking that the judgment rendered in favor of the defendant be affirmed, but that that part of the judgment rendered in favor of the plaintiff and against the defendant, plaintiff in reconveñtion, be reversed and that judgment be rendered in favor of the defendant, plaintiff in recon-vention, in the sum of $870.
*86 It was stipulated at the beginning of the trial that the total damages suffered by the plaintiff amounted to the sum of $650 and that the total damages suffered by the defendant amounted to $870.
The issues presented are purely factual and in order to resolve them, it will be necessary to consider, in detail, all of the testimony presented.
The first witness to testify on behalf of the plaintiff was one John H. Hughes. This man testified that during the month of October, 1955, he was employed by the Triple A Construction Company, and that he arrived' at the scene of the accident some twenty minutes after it had occurred. At that time, he stated, the truck was on its side, some 20 to 25 feet west of the intersection of Blount Road and the dirt road and that no part of it was in the Blount Road. The Packard automobile was in the Blount Road, on the asphalt. He stated that the left front wheel of the automobile had been skidding and had skidded approximately 130 or 140 feet The skid marks started with the left front wheels of the Packard skidding about 2 feet north of the center line, although he was not positive as to whether or not a center line was actually on the road at. the time. This witness placed the point of impact 20 feet west of the intersection of the asphalt covered Blount Road and the dirt road which intersected it. The intersection of the two roads, he stated, was obstructed somewhat by weeds and that subsequent to the' accident, he had had these ‘ weeds cut because of the benefit which would accrue to people travelling the road.
Lionel Watson, testifying on behalf of the plaintiff, stated that on October 20, 1955, he was working for A. W. Watson, his brother, driving the dump truck which was involved in the collision. He stated that just before the accident he had been coming from a dirt pit where he had gotten a load of dirt and that when he reached the Blount Road, he stopped between 6 and 10 feet from the edge of same on the south side, looked right and left, and that seeing nothing coming, he proceeded on to the road. He testified that when he was about in the middle of the road, he saw the approaching car, and then continued on some 45 feet before the car collided with the truck. He stated that when he first saw the car, he was straightening out to go on down the road in a westerly direction and that it was then 100 or 175 feet from him and skidding at the time. Seeing this, he pulled on the shoulder at an angle in an effort to try to get out of the way, but nevertheless, the car collided with the truck. The truck was struck on the left rear wheel by the left front end of the Packard automobile. Three or four hours later, he paced off the skid marks left by the Packard and they totalled some 40 paces. He testified that at the moment of the collision, he was on the north side of the road with his right hand wheels off of the asphalt and on the shoulder as far as he could get without running into the ditch. At that time the car was on the left side of .the road going east. He estimated that the left front wheels were about 2% or 3 feet from the north side of Blount Road. He stated further that from the time he entered Blount Road he had trav-elled about 25 to 27 feet before he saw the Packard automobile at. which time he was about center of the road. It was stipulated that the dump truck was six feet, six inches in height, seven feet, five inches in width and seventeen feet in length.
On cross examination he stated that when he stopped his truck preparatory to entering the Blount Road, he himself in the cab was some six feet from the edge of the road and that he could see some three to four hundred feet. He stated that though he looked to both the right and the left, he saw nothing coming and then proceeded into the road. He repeated that he was about “middle ways” into the road when he first saw the approaching automobile; When he first saw the automobile, it .appeared to him to be in the middle of the road at which time he also was in the *87 middle of the road. When the impact occurred his truck had not completely straightened out but was still at a slight angle. He estimated his speed at the time of the collision at between six and eight miles per hour and stated that it was his belief that after the impact he did not move forward at all. He repeated that the skid marks of the automobile were such that the left front wheel was some 2 to S feet from the north side of the Blount Road. The left wheel was closer to the north edge of the road than it was to the middle, and the right wheel’s skid mark was fairly close to the center of the road. The skid marks angled to the north from their point of origin, he stated.
On re-direct examination, this witness stated that he was on his side of the road when he saw the automobile some 100 to 200 feet away. He repeated that he measured the skid marks and that they totalled some 40 paces. The left wheel’s skid marks were some 3 feet from the left side of the road and the right skid marks were about the center of the road. Where the skid marks started he said the right skid mark was a foot to a foot and a half on the south of the center of the road and the left one was over on the north side.
Armand W. Watson, plaintiff, testified that he owned the dump truck in question on the day of the accident. He stated that he visited the scene of the accident aft-erwards and found his truck on the north side of the Blount Road completely in the ditch with the wheels about three to three and a half feet from the edge of the asphalt. At that time, the Packard automobile had already been removed by a wrecker. Pie stated that he measured the skid marks left by the Packard automobile and that they extended some 41 paces west from the point of the collision and that at what he considered to be the point of the collision, the skid marks left by the left wheels 'were some 2% to 3 feet from the north shoulder of the road. The right front wheel was some 4% to 5 feet north of the middle of the road: He stated that he returned to thé scene that evening and made the measurements again and that at that time, the measurements were the same as those he had made the first time. He placed the point of collision at 25 feet west of the west line of the side road. The width of the Blount Road he placed at 19Yz or 20 feet with shoulders estimated at from 2% to 3 feet.
One D. T. Rutland was called by the defendant and stated that he had investigated the accident scene some 4 to 5 days after it had occurred. This witness identified certain photographs that he had taken of the locality and, in addition, stated that he had measured the Blount Road at the point of the accident and that it was 17 feet, 6 inches in width. He stated that he did not notice any skid marks at that time. The photographs introduced in the record show that there is a telephone pole on the north side of Blount Road and that this telephone pole would be about in the middle of the side or dirt road if it went across Blount Road. According to Mr. Rutland that particular telephone pole is exactly 35 feet from the middle of the dirt that was spilled from the dump truck as a result of the collision.
One Francis' Julais was also called by the defendant and identified certain photographs which he had taken of the scene.
Leland Paul Gaudin, the husband of the lady who was driving the Packard automobile, stated that he went to the scene of the accident shortly after its occurrence at which time the Packard automobile had already been removed. The truck, he stated, was facing west and was turned over with its right back wheels just in the north ditch. This witness stated that he observed tire marks made by both the automobile and truck. Those of the automobile started with the left wheel slightly north of the center line but ■ at the point of impact, they were to the south of the center line. On cross examination, he stated that skid marks of the automo *88 bile were in a straight line and went from northwest to southeast. He did not measure the road nor did he measure the skid marks themselves.
Mrs. Elaine C. Gaudin testified that she was the driver of the Packard automobile which was involved in the accident with the dump truck on October 20, 19SS. She stated at the time of the accident that a maid, one Leona Chinn, was with her in the automobile seated on the front seat next to her. She first saw the truck as 'it entered the Blount Road from the south by a dirt road and the danger was first called to her attention when Leona Chinn hollered “Look out!” or words to that effect. As. soon as she saw the truck, or as soon as Leona Chinn exclaimed “Look out!”, she applied her brakes. She stated that she did not know how close she was or did not know the actual distance but she was very close and that everything happened very suddenly.
When questioned' as to her position in the road when she first saw the truck, this lady stated that she may have been slightly to the left but that she did not think she was. Her speed she estimated at about 40 miles per hour but stated that that was only an estimate because she had not looked at her speedometer. While the automobile did not belong to her, she was familiar with it and stated that it was in good condition with good brakes and tires, having just been checked over. The truck had not completed his turn when the accident took place but was still making its turn with a portion of the truck on her side' of the road. At the time of the collision, she said that she was almost positive that she was entirely on her side of the road and that there was no way to avoid striking the truck. She stated that' the southwest corner of the intersection had a lot of small trees, thick underbrush and honeysuckle which made visibility very bad. She further stated that the site where the accident took place is outside of the city limits, that there are no speed signs' on Blount Road and it is out in the open country.
On cross examination, this witness repeated that the brakes on the automobile were in good condition and that she applied same as soon as Leona Chinn shouted. She stated again that she did not know what distance she actually traveled from the time that the danger became apparent until the time of the collision but that it seemed very short. She stated further that she tried to turn to the right in an effort to avoid the collision but she was uncertain as to whether she had actually turned to the right or not. She did not know whether, after her brakes were applied, her wheels locked nor did she know whether they caused skid marks. She stated that after the accident, she was upset with her chest hurting and was seeing spots in front of her eyes.
Leona Chinn testified that she was a passenger in the Packard automobile driven by Mrs. Gaudin. She stated that she first saw the truck when the front end of it was coming out into the Blount Road from which she called “a little off street.” Upon seeing the danger she told Mrs. Gaudin to “Watch out!” at which time Mrs. Gau-din applied her brakes. Mrs. Gaudin’s speed was estimated by Leona Chinn at about 40 miles per hour. She stated that to the best of her knowledge, the Packard automobile was on its fight side of the road and that when she first saw the dump truck, while she did not know how far away it was, it seemed pretty close. The collision occurred before the dump truck had completed its turn, at which time it was about in the middle of the road with the dump portion in Mrs. Gaudin’s line of traffic. This witness stated also that there were bushes and small trees at the southwest corner of the intersection and that since the accident, they had been removed. This witness was knocked unconscious and. knew nothing about any skid marks which may have been left.
*89 A Mr. Donnie Mauroner, called as rebuttal witness by the plaintiff, testified that in October, 1955, he investigated the accident in his official capacity as a State Trooper. He found the vehicles with the dump truck headed west on its right side off of the road and the 'Packard across the highway with the front headed north. He stated the width of the Blount Road at the place of collision to be 19 feet six inches. He places the point of collision in the Blount Road approximately five feet from the north edge of the road. This witness stated that there were approximately 120 feet of skid marks left by the Packard automobile. He stated that the skid mark left by the left wheel was a few inches to the north of the center of the road, at the starting point bearing north all the way to the point of collision. At the point of collision, he estimated that the left wheel was approximately five or six feet from the north edge of the road.
As will be seen from the above and foregoing, the testimony given in the matter is in hopeless conflict- with some of the plaintiff’s witnesses placing the ■ Packard automobile in the wrong lane of traffic and with the defendant’s witnesses placing the Parkard in its right iane of traffic. Be that as it may however, we are of the opinion that the proximate cause of this accident was the joint and concurrent neg1 ligence of the drivers of both vehicles. It appears from the evidence as found in this record that the side or dirt road, which is a private road, forms a T intersection with Blount Road which is a blacktopped highway. The evidence further reveals the fact that this intersection is out in the open country with no highway speed limit signs on Blount Road.
The Highway Regulatory Act provides as follows:
LSA-R.S. 32 .-237(E)
“The driver of a vehicle entering a public highway from a private road or entering a private road from a pub-lie highway shall yield the right of way to all vehicles approaching on the public highway and to all pedestrians properly walking thereon.”
LSA-R.S, 32:231
“Vehicles shall be driven on right side of the highway
“Upon all highways, including intersections, of sufficient width, except one-way streets or roads, the driver of a vehicle shall drive it upon the right half of the highway and shall drive a slow moving vehicle as closely as possible to the right hand edge or curb of the highway unless it is impracticable to travel on such side of the highway, and except when overtaking and passing another vehicle, subject to the limitations applicable in overtaking and passing set forth hereafter.”
It appears from the evidence that defendant’s vehicle was traveling more on the north side or left half of the highway in violation of the above regulation and we are of the opinion that this .negligent act was a proximate cause of the collision.
It further appears from the evidence that the southwest corner of the ..intersection constituted a blind intersection due to the growth of trees and underbrush, which made it necessary for plaintiff’s driver to use extra caution before entering the Blount Road, in addition to LSA-R.S. 32:237(E). From the facts as found in this record, we are of the firm opinion that the point of collision took place about four feet north of the center line of Blount Road and approximately 20 fee't west of the west line of the side road. That being the' case, plaintiff’s driver must have been in érror when he claims that he stopped before entering Blount Road, looked to the right and left and saw nothing coming because the road is straight and clear for %o of a mile west of the intersection involved. We are of the opinion that plaintiff’s , driver, was negligent in not taking *90 more precaution before entering the highway from a private road and that his negligence was a proximate cause of the collision. Since the accident was caused through the concurrent negligence of both drivers, neither of the parties should be allowed to recover.
For the reasons assigned the judgment appealed from is affirmed.
Judgment affirmed.